## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

ALEXANDER R.

     *Plaintiff*,

*v.*

COMISSIONER OF SOCIAL
SECURITY,

     *Defendant.*

_____/

Case No. 2:24-cv-12318

Linda V. Parker
United States District Judge

Patricia T. Morris
United States Magistrate Judge

## REPORT AND RECOMMENDATION ON
## CROSS MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 12, 16)

## I.    RECOMMENDATION

Plaintiff Alexander R. challenges the Commissioner of Social Security regarding a final decision denying his claim for Disability Insurance Benefits ("DIB"). (ECF No. 1, PageID.1-2). The case was referred to the undersigned for review. (ECF No. 11); *see* 28 U.S.C. § 636(b)(1)(B) (2012); E.D. Mich. LR 72.1(b)(3). For the reasons below, I conclude that substantial evidence does not support the Commissioner's denial of benefits, and I recommend **DENYING** Defendant's motion, (ECF No. 16), **GRANTING** Plaintiff's motion, (ECF No. 12), and remanding the case to the Commissioner under sentence four of 42 U.S.C. § 405(g).

II.   **REPORT**

A.   **Introduction and Procedural History**

Plaintiff's application for DIB was filed on August 18, 2021. (ECF No. 8-1, PageID.256).  He alleged that he became disabled on March 10, 2019. (*Id.*)  The Commissioner denied the claim on January 27, 2022, and after reconsideration, explained the decision on November 18, 2022. (*Id.* at PageID.91, 92).  Plaintiff then requested a hearing before an administrative law judge ("ALJ"), which occurred on March 25, 2024. (*Id.* at PageID.111).  The ALJ issued a decision on April 26, 2024, finding that Plaintiff was not disabled.  (*Id*. at PageID.108-33).  The Appeals Council denied review on July 25, 2024.  (*Id.* at PageID.31).  Plaintiff sought judicial review on September 5, 2024.  (ECF No. 1).  The parties filed cross-motions for summary judgment and briefing is complete.  (ECF Nos. 12, 16, 17).

B.   **Standard of Review**

The Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  The District Court's review is restricted solely to determining whether the "Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x. 502, 506 (6th Cir. 2014) (internal quotation marks omitted).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d

234, 241 (6th Cir. 2007) (internal quotation marks omitted).  "[T]he threshold for such evidentiary sufficiency is not high. . . . It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

The Court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ.  *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).  The Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility."  *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).  If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion."  *Id*. at 286 (internal citations omitted).

### C.    Framework for Disability Determinations

Disability benefits are available only to those with a "disability." *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  "Disability" means the inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.

42 U.S.C. § 1382c(a)(3)(A) (2012). The Commissioner's regulations provide that disability is determined through the application of a five-step sequential analysis:

(i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.

(ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.

(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.

(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520 (2021); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his or] her impairments and the fact that [he or] she is precluded from performing [his or] her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The claimant must provide evidence establishing the residual functional capacity, which "is the most [the claimant] can still do despite [his or her] limitations," and is measured using "all

the relevant evidence in [the] case record." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) (2021).

The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his or] her RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D.   ALJ Findings

Following the five-step sequential analysis, the ALJ determined that Plaintiff was not disabled. (ECF No. 8-1, PageID.126). At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date of March 10, 2019. (*Id.* at PageID.113). At step two, the ALJ concluded that Plaintiff had the following severe impairments: bipolar disorder, depression, anxiety, panic disorder, attention deficit hyperactivity disorder (ADHD), post-traumatic stress disorder (DTSD), coronary artery disease and left ventricular hypertrophy. (*Id.* at PageID.114). The ALJ found that Plaintiff experienced non-severe impairments of mild spondylosis, mild lumbar degenerative disc disease, hypertension, obesity, hyperlipidemia, tinnitus, sensorineural hearing loss, asthma, chronic obstructive pulmonary disease (COPD), cannabis use disorder, and alcohol use disorder. (*Id.* at

PageID.114).   None of these impairments met or medically equaled a listed impairment at step three.  (*Id.* at PageID.115-118).  Next, the ALJ found that Plaintiff had the residual functional capacity ("RFC")

> to perform light work as defined in 20 CFR 404.1567(b) except: he can never climb ladders, ropes or scaffolds; he can occasionally climb ramps and stairs; he can occasionally balance, stoop, kneel, crouch, and crawl; he can never work at unprotected heights; and his work is limited to simple and routine tasks, with occasional decision making and occasional changes in the work setting, and with occasional interaction with the public and coworkers.

(*Id.* at PageID.118).  At step four, the ALJ found that Plaintiff is unable perform any past relevant work.  (*Id.* at PageID.124).  Finally, at step five, the ALJ determined that Plaintiff could perform a significant number of jobs in the national economy, including work as a cleaner housekeeping, a routing clerk, and a marker. (*Id.* at PageID.125-26).  Accordingly, the ALJ concluded that Plaintiff was not disabled. (*Id.* at PageID.126).

### E.    Administrative Record

The administrative record has been fully reviewed; the evidence will be brought forth under the relevant portion of the argument section.

### F.    Governing Law

The ALJ must "consider all evidence" in the record when making a disability decision.  42 U.S.C. § 423(d)(5)(B).  The newly promulgated regulations, applicable to applications for disability benefits filed on or after the effective date of March 27,

6

2017, such as Plaintiff's application here, distinguish between acceptable medical sources, medical sources, and nonmedical sources. An acceptable medical source means a medical source who is a:

(1)    Licensed physician (medical or osteopathic doctor);

(2)    Licensed Psychologist, which includes:

    (i)    A licensed or certified psychologist at the independent practice level; or

    (ii)   A licensed or certified school psychologist, or other licensed or certified individual with another title who performs the same function as a school psychologist in a school setting, for impairments of intellectual disability, learning disabilities, and borderline intellectual functioning only;

(3)    Licensed optometrist for impairments of visual disorders, or measurement of visual acuity and visual fields only, depending on the scope of practice in the State in which the optometrist practices;

(4)    Licensed podiatrist for impairments of the foot, or foot and ankle only, depending on whether the State in which the podiatrist practices permits the practice of podiatry on the foot only, or on the foot and ankle;

(5)    Qualified speech-language pathologist for speech or language impairments only. For this source, qualified means that the speech-language pathologist must be licensed by the State professional licensing agency, or be fully certified by the State education agency in the State in which he or she practices, or hold a Certificate of Clinical Competence in Speech-Language pathology from the American Speech-Language-Hearing Association;

(6)    Licensed audiologist for impairments of hearing loss, auditory processing disorders, and balance disorders within the licensed scope of practice only [];

(7)    Licensed Advanced Practice Registered Nurse, or other licensed advanced practice nurse with another title, for impairments within his or her licensed scope of practice []; or

(8)    Licensed Physician Assistant for impairments within his or her licensed scope of practice [].

20 C.F.R. § 404.1502(a).

A medical source is "an individual who is licensed as a healthcare worker by a State and working within the scope of practice permitted under State or Federal law, or an individual who is certified by a State as a speech-language pathologist or a school psychologist and acting within the scope of practice permitted under State or Federal law." *Id.* § 404.1502(d).

In contrast, a nonmedical source means "a source of evidence who is not a medical source." *Id.* § 404.1502(e). "This includes, but is not limited to: (1) [the claimant]; (2) Educational personnel (for example, school teachers, counselors, early intervention team members, developmental center workers, and daycare center workers); (3) Public and private social welfare agency personnel; and (4) Family members, caregivers, friends, neighbors, employers, and clergy." *Id.*

The SSA "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings, including those from your medical sources." *Id.* § 404.1520c(a). "The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph

(c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id.*  The SSA will consider several factors when it contemplates "the medical opinion(s) and prior administrative medical findings" in a case. *Id.*

Of these factors, the first is "supportability."  This factor considers that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be[.]" *Id.* § 404.1520c(c)(1).

The SSA will also consider the "consistency" of the claim.  This includes the consideration that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be[.]" *Id.* § 404.1520c(c)(2).

In addition, the SSA will consider the "[r]elationship with claimant[.]" *Id.* § 404.1520c(c)(3).  This factor will include the analysis of:

> (i)    Length of the treatment relationship. The length of time a medical source has treated you may help demonstrate whether the medical source has a longitudinal understanding of your impairment(s);
>
> (ii)   Frequency of examinations. The frequency of your visits with the medical source may help demonstrate whether the medical source has a longitudinal understanding of your impairment(s);

     (iii)   Purpose of the treatment relationship. The purpose for treatment you received from the medical source may help demonstrate the level of knowledge the medical source has of your impairment(s);

     (iv)   Extent of the treatment relationship. The kinds and extent of examinations and testing the medical source has performed or ordered from specialists or independent laboratories may help demonstrate the level of knowledge the medical source has of your impairment(s);

     (v)   Examining relationship. A medical source may have a better understanding of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder[.]

*Id.* The fourth factor of the SSA's analysis is "specialization." In making this determination, the SSA will consider "[t]he medical opinion or prior administrative medical finding of a medical source who has received advanced education and training to become a specialist may be more persuasive about medical issues related to his or her area of specialty than the medical opinion or prior administrative medical finding of a medical source who is not a specialist in the relevant area of specialty." *Id.* § 404.1520c(c)(4).

Finally, the SSA will consider "other factors." These may include any other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." *Id.* § 404.1520c(c)(5). "This includes, but is not limited to, evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." *Id.* Further, when the SSA considers "a medical source's familiarity

10

with the other evidence in a claim, we will also consider whether new evidence we receive after the medical evidence source made his or her medical opinion or prior administrative medical finding makes the medical opinion or prior administrative medical finding more or less persuasive."  *Id.*

As to the duty to articulate how persuasive the medical opinions and prior administrative medical findings are considered, the new regulations provide "articulation requirements."   The ALJ will consider "source-level articulation." Pursuant to this requirement, "[b]ecause many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for [the ALJ] to articulate in each determination or decision how [he or she] considered all of the factors for all of the medical opinions and prior administrative medical findings in [each] case record."  *Id.* § 404.1520c(b)(1).

"Instead, when a medical source provides multiple medical opinion(s) or prior administrative finding(s), [the ALJ] will articulate how [he or she] considered the medical opinions or prior administrative findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate."  *Id.*  The regulation reiterates that the ALJ is "not required to articulate how [he or she] considered each medical opinion or prior administrative finding from one medical source individually."  *Id.*

The regulations stress that the "factors of supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section) are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be." *Id.* § 404.1520c(b)(2).   As such, the SSA "will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision.  We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record." *Id.*

When medical opinions or prior administrative findings are "equally persuasive," "well-supported" and "consistent with the record" "about the same issue," "but are not exactly the same, [the ALJ] will articulate how [he or she] considered the other most persuasive factors[] for those medical opinions or prior administrative medical findings in [the claimant's] determination or decision." *Id.* § 404.1520c(b)(3).

The regulations clarify that the SSA is "not required to articulate how we considered evidence from non-medical sources using the requirements of paragraphs (a) through (c) of this section." *Id.* § 404.1520c(d).

In addition, the regulations expressly state that the SSA will not consider "evidence that is inherently neither valuable nor persuasive" and "will not provide any analysis about how we considered such evidence in our determination or decision, even under § 404.1520c." *Id.* § 404.1520b(c). The regulations categorize evidence that is inherently neither valuable nor persuasive as: "[d]ecisions by other governmental and nongovernmental entities;" "[d]isability examiner findings," meaning, "[f]indings made by a State agency disability examiner made at a previous level of adjudication about a medical issue, vocational issue, or the ultimate issue about whether you are disabled;" and "[s]tatements on issues reserved to the Commissioner[;]" these statements include:

(i)     Statements that you are or are not disabled, blind, able to work, or able to perform regular or continuing work;

(ii)    Statements about whether or not your impairment(s) meets or medically equals any listing in the Listing of Impairments[];

(iii)   Statements about what your residual functional capacity is using our programmatic terms about the functional exertional levels [] instead of descriptions about your functional abilities and limitations[];

(iv)    Statements about whether or not your residual functional capacity prevents you from doing past relevant work[];

(v)     Statements that you do or do not meet the requirements of a medical-vocational rule[]; and

(vi)    Statements about whether or not your disability continues or ends when we conduct a continuing disability review[.]

*Id.* § 404.1520b(c).

The regulations also provide that "[b]ecause a decision by any other governmental and nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits is based on its rules, it is not binding on us and is not our decision about whether you are disabled or blind under our rules." *Id.* § 404.1504. Therefore, the Commissioner "will not provide any analysis in our determination or decision about a decision made by any other governmental or nongovernmental entity about whether you are disabled, blind, employable, or entitled to benefits." *Id.* The Commissioner will, however, "consider all of the supporting evidence underlying the other governmental or nongovernmental entity's decision that we receive as evidence in your claim[.]" *Id.*

The regulations clarify that "[o]bjective medical evidence means signs, laboratory findings, or both." *Id.* § 404.1502(f). Signs are defined as "one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from your statements (symptoms)." *Id.* Further, "[s]igns must be shown by medically acceptable clinical diagnostic techniques. Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development or perception, and must also be shown by observable facts that can be medically described and evaluated." *Id.* § 404.1502(g). Laboratory findings "means one or more anatomical, physiological, or psychological phenomena that can be shown by

the use of medically acceptable laboratory diagnostic techniques[,]" and "diagnostic techniques include chemical tests (such as blood tests), electrophysiological studies (such as electrocardiograms and electroencephalograms), medical imaging (such as x-rays), and psychological tests." *Id.* § 404.1502(c).

The most recent amendments to the regulations also tweaked the manner in which the SSA evaluates symptoms, including pain. "In considering whether you are disabled, we will consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. We will consider all your statements about your symptoms, such as pain, and any description your medical sources or nonmedical sources may provide about how the symptoms affect your activities of daily living and your ability to work[.]" *Id.* § 404.1529(a).

But the SSA clarified, "however, statements about your pain or other symptoms will not alone establish that you are disabled. There must be objective medical evidence from an acceptable medical source that shows you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and that, when considered with all of the other evidence (including statements about the intensity and persistence about your pain or other symptoms which may reasonably be accepted as consistent with the medical signs

and laboratory findings), would lead to a conclusion that you are disabled." *Id.* §
404.1529(a).

Further, "[i]n evaluating the intensity and persistence of your symptoms,
including pain, we will consider all of the available evidence, including your medical
history, the medical signs and laboratory findings, and statements about how your
symptoms affect you." *Id.* § 404.1529(a). The SSA clarified that it will "then
determine the extent to which your alleged functional limitations and restrictions due
to pain or other symptoms can reasonably be accepted as consistent with the medical
signs and laboratory findings and other evidence to decide how your symptoms
affect your ability to work." *Id.*

Finally, the SSA noted that "[b]ecause symptoms sometimes suggest a greater
severity of impairment than can be shown by objective medical evidence alone, we
will carefully consider any other information you may submit about your
symptoms." *Id.* § 404.1529(c)(3). This other information may include "[t]he
information that your medical sources or nonmedical sources provide about your
pain or other symptoms (e.g., what may precipitate or aggravate your symptoms,
what medications, treatments or other methods you use to alleviate them, and how
the symptoms may affect your pattern of daily living)," which "is also an important
indicator of the intensity and persistence of your symptoms." *Id.*

"Because symptoms, such as pain, are subjective and difficult to quantify, any symptom-related functional limitations and restrictions that your medical sources or nonmedical sources report, which can reasonably be accepted as consistent with the objective medical evidence and other evidence, will be taken into account . . . .   We will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your medical sources, and observations by our employees and other persons[.]"   *Id.*   The regulations establish that "[f]actors relevant to your symptoms, such as pain, which we will consider include []:

(i)   [D]aily activities;

(ii)   The location, duration, frequency, and intensity of . . . pain;

(iii)   Precipitating and aggravating factors;

(iv)   The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;

(v)   Treatment, other than medication, . . . received for relief of . . . pain;

(vi)   Any measures . . . used to relieve . . . pain.

*Id.*

The new regulations also impose a duty on the claimant: "In order to get benefits, you must follow treatment prescribed by your medical source(s) if this treatment is expected to restore your ability to work."   *Id.* § 404.1530(a).   Stated differently, "[i]f you do not follow the prescribed treatment without a good reason,

we will not find you disabled or, if you are already receiving benefits, we will stop

paying you benefits." *Id.* § 404.1530(b).  Acceptable (or "good") reasons for failure

to follow prescribed treatment include:

(1)   The specific medical treatment is contrary to the established teaching and tenets of your religion;

(2)   The prescribed treatment would be cataract surgery for one eye, when there is an impairment of the other eye resulting in a severe loss of vision and is not subject to improvement through treatment;

(3)   Surgery was previously performed with unsuccessful results and the same surgery is again being recommended for the same impairment;

(4)   The treatment because of its magnitude (e.g. open heart surgery), unusual nature (e.g., organ transplant), or other reason is very risky for you; or

(5)   The treatment involves amputation of an extremity, or major part of an extremity.

*Id.* § 404.1530(c).

## G.   Arguments and Analysis

Plaintiff contends that substantial evidence does not support the ALJ's

physical RFC because the record lacks medical evidence of Plaintiff's capacity

following the June 2022 motor vehicle accident.   (ECF No. 12, PageID.1594).

Plaintiff reported that he had been involved in and suffered head trauma from a

motor vehicle accident in 1999 and another head injury in 2018.  (ECF No. 8,

PageID.1174).

Under the regulations, a consultative examination "may" be appropriate to

"secure needed medical evidence, such as clinical findings, laboratory tests, a

diagnosis, or prognosis" in situations such as:

> (1)The additional evidence needed is not contained in the records of
> Plaintiff's medical sources; (2) The evidence that may have been
> available from [Plaintiff's] treating or other medical sources cannot be
> obtained for reasons beyond [Plaintiff's] control, such as death or
> noncooperation of a medical source; (3) Highly technical or specialized
> medical evidence that [the Commissioner] need[s] is not available from
> [Plaintiff's] treating or other medical sources; or (4) There is an
> indication of a change in [Plaintiff's] condition that is likely to affect
> [Plaintiff's] ability to work, but the current severity of [Plaintiff's]
> impairment is not established.

20 C.F.R. § 404.1519a(b).

In *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp.2d 908 (N.D. Ohio 2008), there

was only one medical opinion from a state agency physician that did not take into

account the two years of medical evidence developed after the opinion was given.

The court found that substantial evidence was lacking regarding the RFC in that case

and whenever there is no medical evidence as to the Plaintiff's functional capacity

or where the RFC is based on a medical opinion made "without the benefit of review

of a substantial amount of the [Plaintiff's] records."  *Deskin*, 605 F.Supp.2d at 911.

In *Kizys*, the Northern District of Ohio clarified that "*Deskin* sets out a narrow rule

that does not constitute a bright-line test.  It potentially applies only when an ALJ

makes a finding of work-related limitations based on no medical source opinion or an outdated source opinion that does not include consideration of a body of objective medical evidence." *Kizys v. Comm'r of Soc. Sec.*, No. 3:10-cv-25, 2011 WL 5024866, at *2 (N.D. Ohio Oct. 21, 2011).  Neither of these cases are controlling and both have been criticized.  The latest elucidation from the Northern District of Ohio has indicated that an ALJ "may" but is not required to order a consultative examination in situations listed in the regulation where, as here, there is a change in the Plaintiff's condition but the severity of that change has not been assessed.  20 C.F.R. § 404.1519a(b)(4).  *Carr v. Comm'r of Soc. Sec.*, No. 5-23-CV-00187-MBM, 2024 WL 1556398, at *13 (N.D. Ohio Jan. 8, 2024).  However, the case also notes that "there must be 'some indication that the ALJ at least considered' the later medical records."  *Id*. (quoting *Fisk v. Astrue*, 253 F. App'x 580, 585 (6th Cir. 2007)).

This principle is related to the requirement that "ALJs are unable to take raw medical data and extrapolate what a claimant can and cannot do." *Bird v. Comm'r of Soc. Sec.*, No. 20-11919, 2021 WL 8014027, at *4 (E.D. Mich. 2021).  "An ALJ should obtain a medical expert opinion when developing the RFC unless the 'medical evidence shows relatively little physical impairment such that the ALJ can permissibly render a commonsense judgment about functional capacity.' " *Id.* (internal citation omitted).  Although there is no bright line rule that an RFC must

be supported by a medical opinion, it is a rare case in which the ALJ can formulate an RFC without benefit of an assessment by a medical professional. *See Charbonneau v. Comm'r of Soc. Sec.*, 2019 WL 960192, at *16-17 (E.D. Mich, Jan. 11, 2019); *Williams v. Berryhill*, 2019 WL 1274821, at *3 (E.D. Mich. Mar. 20, 2019). I suggest that this is not one of those rare cases and that the ALJ should have sought benefit of a medical source opinion as to Plaintiff's RFC after his accident in 2022.

In 2022, Plaintiff was a passenger in a rollover accident while his friend was driving an ATV and suffered "acute right-sided low back pain with right-sided sciatica," "spinal stenosis of lumbar region," and "sacral back pain." (ECF No. 8, PageID.1128). A CT scan taken on June 15, 2022 showed "degenerative disc disease" especially in the L5-S1 area, "central stenosis at L4-5" and "left lateral stenosis and left foraminal encroachment L5-S1." (ECF No. 8-1, PageID.1141). An MRI taken on June 30, 2022, revealed "posterior disc bulge from the left foramen to the right paracentral location at L5-S1 with severe narrowing of the left lateral recess and facet hypertrophic change yielding severe left neural foraminal narrowing with mild central canal stenosis and mild right neural foraminal narrowing," "mild-to-moderate central canal stenosis with moderate to severe bilateral neural foraminal narrowing with compression of the exiting nerve roots at L4-L5," "mild-to moderate left and right neural foraminal narrowing with mild central canal stenosis at L3-L4,"

and "mild central canal stenosis with mild bilateral neural foraminal narrowing and L2-L3." (*Id.*, PageID.1143).

Any complaints of back pain are absent from 2019-2021 pre-accident treatment notes. (ECF No. 8-2, PageID.840-898). September 8, 2021 treatment notes further indicate that back pain was not an issue; instead, Plaintiff was being treated for hypertension, coronary artery disease, arthritis (while denying joint stiffness), asthma, and anxiety/depression/bipolar. (*Id.* at PageID.800-01). Plaintiff tried physical therapy, medications, muscle relaxers, Toradol injections, and steroid injections to relieve his pain but none have worked adequately. (ECF No. 12, PageID.1595) (citations in original). At the hearing, Plaintiff testified that his back "is killing me. It's in my tailbone, and it's been constant" and that he has a "hard time" "controlling [his] bowels," "sitting for periods of times" and "standing for periods of time." (ECF No. 8-1, PageID.61). Plaintiff further testified that he uses a cane "whenever I'm going to do any walking that's further than maybe 15, 20 feet." (*Id.*, PageID.64-65).

The ALJ's decision contains no opinion as to Plaintiff's RFC after his accident in 2022. The only mention of a medical source opinion in 2022 is that of Nurse Practitioner Faith Jurges, who provided an opinion statement after Plaintiff suffered the offroad accident. (*Id.*, PageID.123). However, the ALJ noted that "she did not have an opinion regarding the claimant's ability to do work-related physical or

mental activities or the limitations or restrictions imposed by the claimant's medical conditions as she only evaluated him for an acute increase in pain during one visit where he did have limitations in physical activity due to pain." (*Id.*). The ALJ then found NP Jurges's "statements not persuasive[.]" (*Id*.). This lack of a medical opinion is exacerbated by the fact that Plaintiff's testimony made clear that his symptoms were much different and worse since the 2022 accident; yet, no medical assessment was done. Plaintiff's injuries are not so simple that a lay person can rely on his or her common sense to assess. In addition, Plaintiff also suffered from many severe impairments (bipolar disorder, depression, anxiety, panic disorder, attention deficit hyperactivity disorder (ADHD), post-traumatic stress disorder (DTSD), coronary artery disease and left ventricular hypertrophy) and a number of non-severe impairments (mild spondylosis, mild lumbar degenerative disc disease, hypertension, obesity, hyperlipidemia, tinnitus, sensorineural hearing loss, asthma, chronic obstructive pulmonary disease (COPD), cannabis use disorder, and alcohol use disorder), which further complicates any assessment of his ability to perform tasks. In this case, there is no indication that the ALJ properly considered the later medical records and their effect on Plaintiff's RFC. *Carr, supra.*

Accordingly, I suggest that substantial evidence does not support the ALJ's

decision and that it should be remanded under sentence four of § 405(g).[1]

### H.     Conclusion

For the previously discussed reasons, I suggest that substantial evidence does not support the Commissioner's denial of benefits, and I recommend **DENYING** Defendant's motion, (ECF No. 16), **GRANTING** Plaintiff's motion, (ECF No. 12), and remanding the case to the Commissioner under sentence four of § 405(g).

### III.   <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.  A party may respond to another party's objections within 14 days after being served with a copy."   Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th

---

[1] Having made this recommendation for remand, Plaintiff's other issues need not be addressed.

Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: July 31, 2025

S/ PATRICIA T. MORRIS
Patricia T. Morris
United States Magistrate Judge